UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SEGUROS NUEVO MUNDO S.A.,

                Plaintiff,

     - against -

ALLEN B. TROUSDALE,

                Defendant.
-----------------------------------------------------------X

**MEMORANDUM AND ORDER**
14-CV-4235 (RRM) (RLM)

ROSLYNN R. MAUSKOPF, United States District Judge.

By Amended Complaint filed on January 30, 2015, plaintiff Seguros Nuevo Mundo ("Seguros") brings this action against defendant Allen B. Trousdale seeking to enforce a guaranty against Trousdale individually. (Am. Compl. (Doc. No. 10).) Trousdale has moved to dismiss the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. Dismiss (Doc. No. 13).) Seguros opposes the motion. (Mem. in Opp (Doc. No. 14).) For the reasons set forth below, the court grants Trousdale's motion.

## BACKGROUND

As alleged in the Amended Complaint, and taking those allegations as true and in the light most favorable to plaintiff, Grad Associates, P.A. ("Grad"), a New Jersey architectural firm, and Eiffel Engineering Technique, C.A. ("EET") formed a joint venture, the Consortium Grad Eiffel (the "Consortium"), that contracted with the Venezuelan government to design, plan, and build a prison in Bolivar City, Venezuela. (Am. Comp. at ¶ 1.) As alleged on information and belief, Trousdale was at all relevant times the sole shareholder and president of Grad. (*Id.* at ¶ 4.)[1] As a condition of the contract with the Venezuelan government, the Consortium was

---

[1] In its opposition papers, however, Seguros refers to Trousdale as Grad's president and "principal shareholder" or "one of its principal shareholders." *See, e.g.,* Mem. in Opp (Doc. No. 14) at 6, 8,14, 16.

1

obligated to procure bonds, which were ultimately secured from Seguros, a Venezuelan surety that underwrites payment and performance bonds that are issued to entites involved in construction projects. (*Id*. at ¶¶ 1, 2, 8, 9.)

As a condition precedent to the execution and delivery of the bonds, "Trousdale as the sole shareholder and president of Grad, executed and had notarized . . . [a] Guaranty." (*Id*. at ¶ 10.) Annexed to the Amended Complaint is a copy of the "Guaranty." [2] (*Id*., Ex. A.) The original is in Spanish. Also appended to the Amended Complaint is an English translation provided by Seguros, ostensibly made and certified by one Bianca Milagros Blanco Pedraza (the "Blanco translation").[3] (*Id*., Ex. B.)

Relying on language from the Guaranty itself, quoted below from the Blanco translation, Seguros alleges that "Trousdale personally agreed to" the following:

> (a) [To] appoint myself on behalf of GRAD ASSOCIATES, P.A., as Joint and several guarantor and primary payor up to the total amounts guaranteed, by virtue of the Bonds granted and to be granted in the future, committing myself to refund without delay and at the first request of the Company any amount of money that is due on the account of the aforementioned Bonds, plus interest accrued during the delay in payment if any, calculated at the prevailing market rate, plus judicial and extra judicial collection costs.
>
> (b) The commitment I hereby acquire on behalf of GRAD ASSOCIATES, P.A. will remain in effect for as long as the Bonds granted remain in force, and it will not be extinguished until the Company is released from all liability derived from the same, and will not lapse as the Company is not released from liability thereof.
>
> [and]

---

[2] The document is not entitled "Guaranty," but for ease of reference on this motion, it will be referred to as such.

[3] The original Complaint initiating this action (Compl. (Doc. No. 1)) also annexed the Spanish version of the Guaranty, but appended a different translation, ostensibly by the Columbia University Tutoring and Translating Agency. (*Id*., Ex. B.) Seguros claims in its opposition to the instant motion that after reviewing the Columbia translation with Venezuelan counsel, "it was discovered that several important provisions and nuances of this legal document had not been accurately translated." (Mem. in Opp'n. at 7 n.1 (ECF Pagination).) Although the two translations are similar in some key respects, they are also dissimilar in other key respects. For purposes of this Memorandum and Order, the court relies on the Blanco translation as it is part and parcel of the Amended Complaint, which is the operative pleading and the object of the instant motion.

> (c) That the joint and several Guarantee that GRAD ASSOCIATES P.A. hereby makes will remain in effect for so long as the Bonds granted will remain in force and will not be extinguished until the Company is released from all liability derived from the same.

(*Id.* at ¶ 11.)

Seguros further alleges:

> In reliance on Trousdale's Guaranty, Seguros issued the Bonds. The Guaranty was unconditional and obligated Trousdale and Grad, jointly and severally, to pay to the Plaintiff any and all amounts that Seguros was required to pay under the Bonds. In addition, Grad was obligated to place in escrow in a commercial or investment bank negotiable instrument(s), cash, or securities valued at one million ($1,000,000) dollars.

(Am. Compl. at ¶ 12.)

According to the Amended Complaint, Grad never deposited these monies into escrow and, the Venezuelan government claimed a breach of the construction contract. (*Id.* at ¶¶ 13–14.) The government sued Seguros, seeking damages under the bonds of $18.6 million. (*Id.* at ¶ 15.) The suit eventually settled, and Seguros paid approximately $12 million. (*Id.* at ¶ 16.) Seguros alleges that at some unspecified point in time, Grad terminated its business operations, and that no sums sought to be recovered from Grad or Trousdale have been paid to Seguros despite written and oral demands for such payments. (*Id.* at ¶ 17.)

Seguros now seeks to recover from Trousdale "all sums paid by Seguros under the bonds, as well as costs, disbursements, attorney and notary fees, and other damages pursuant to the Guaranty." (Am. Compl. at ¶ 1.) Seguros alleges that the Guaranty imposes personal liability on Trousdale, and seeks to hold Trousdale individually accountable. Trousdale maintains that the Guaranty was a corporate guarantee on which he is not individually liable, and moves to dismiss the Amended Complaint for failure to plausibly plead a claim for individual liability against Trousdale. The Court agrees with Trousdale.

## DISCUSSION

### I. Standard on a Motion to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to examine the legal, rather than factual, sufficiency of a complaint. As required by Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court considering a 12(b)(6) motion must "take[] factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). A complaint need not contain "'detailed factual allegations,'" but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Rather, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). The determination of whether "a complaint states a plausible claim for relief will . . . be a context-

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007)).

## II. Trousdale's Individual Liability

Each of Seguros's claims for relief are premised upon the notion that Trousdale may be held individually liable under the Guaranty. Thus, Trousdale's motion to dismiss requires this court to determine whether Seguros's Amended Complaint, together with the attached Guaranty, are legally sufficient to support a cause of action based on the Guaranty against Trousdale in his individual capacity.

Under New York law,[4] an agent who signs an agreement on behalf of a disclosed principal will not be individually bound to the terms of the agreement "'unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal.'" *Lerner v. Amalgamated Clothing & Textile Workers Union*, 938 F.2d 2, 5 (2d Cir. 1991) (quoting *Mencher v. Weiss,* 306 N.Y. 1, 4 (1953)); *see also Salzman Sign Co. v. Beck*, 10 N.Y.2d 63, 66–67 (1961). The rule that an agent is not personally liable absent clear and explicit evidence of the agent's intent to be bound "is based on New York's Statute of Frauds, which requires all 'promises to answer for the debt, default or miscarriage of another

---

[4] The only nexus to New York alleged in the Amended Complaint is the fact that Trousdale "maintained a residence and/or principal place of business at 159 Congress Street, Brooklyn, New York . . . ." (Am. Compl. at ¶ 4.) The Guaranty was executed and notarized in New Jersey where Grad operates, and the acts that underlie the claims here, including the place of negotiation and performance, and the location of the project, are centered in Venezuela. Moreover, the Guaranty at issue here has what appears to be a mandatory forum selection clause subjecting Grad alone to the jurisdiction of the court in Caracas, Venezuela. The Guaranty is silent as to choice of law. Thus, under the "center of gravity" analysis applicable to contract cases, a decision to apply New York law is far from clear. *Lazard Freres & Co. v. Protective Life Ins. Co*., 108 F.3d 1531 (2d Cir. 1997) (applying "a spectrum of contacts including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties," as well as public policy, in deciding choice of law questions in contract cases). Only Trousdale addresses this point, and only in passing. (Mem. in Supp. at 3 n.1.) However, both parties apply New York law in their papers on this motion. As such, the court will deem both to have consented to the application of New York law for the purposes of this motion. *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such 'implied consent . . . is sufficient to establish choice of law.'" (quoting *Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989))).

person . . . [to] be in writing and subscribed by the party to be charged therewith . . . .'" *Integrated Mktg. & Promotional Solution., Inc. v. JEC Nutrition, LLC*, No. 06-CV-5640, 2006 WL 3627753, at *3 (S.D.N.Y. Dec. 12, 2006) (citing *Abdi Hosh Ashkir v.* Wilson, 98-CV-2632, 1999 U.S. Dist. LEXIS 14275, at *31 (S.D.N.Y Sept. 13, 1999) (quoting N.Y. Gen. Obl. L. § 5-701(a)(2))).

To determine whether there is a sufficient showing of an agent's intent to be personally bound, courts in this circuit look to the following five "*Lollo* factors": "[1] the length of the contract, [2] the location of the liability provision(s) in relation to the signature line, [3] the presence of the signatory's name in the agreement itself, [4] the nature of the negotiations leading to the contract, and [5] the signatory's role in the corporation." *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo*, 35 F.3d 29, 35 (2d Cir. 1994). The Second Circuit has also suggested examining the structure and content of the signature lines to determine whether the agent intended to sign the contract in his official capacity only. *Lerner*, 938 F.3d at 5. The *Lollo* factors apply whether the clause that purportedly binds the corporate actor is a personal liability clause or a personal guarantee clause. *See Jacobson v. Televida, Inc.*, No. 04-CV-163, 2005 WL3609101, at *4 (E.D.N.Y. Aug. 10, 2005).

Applying the *Lollo* factors here, and construing the Amended Complaint and the annexed Guaranty, as well as all reasonable inferences therefrom, in favor of Seguros, "clear and explicit evidence" of Trousdale's intent to be bound personally is not plausibly alleged.

Within its four corners, the Guaranty is relatively short at three pages, though it is somewhat dense as it is single spaced. However, here, the Guaranty is wholly in Spanish. The Amended Complaint (as well as its predecessor) is devoid of any allegations indicating whether a

translation was provided to Trousdale, or whether Trousdale enjoyed any fluency or working knowledge of Spanish. Indeed, in its memorandum in opposition, Seguros concedes that none was ever requested or provided. (Def. Mem. in Opp. at 7 n.1.) Seguros also claims, without any support, that because Trousdale signed a number of letters written in Spanish, "he and his agent [Rafael Mendoza, Trousdale's Venezuelan business consultant] clearly understood the Spanish documents that Trousdale was signing." *Id*. Other than these conclusory allegations, which are not admissible on this motion,[5] there are no factual assertions in the Amended Complaint from which this court could conclude that the Guaranty does not present an "attempt[] to trap an unwary corporate officer into making an unintended assumption of personal liability by inserting an obscure clause in the midst of a lengthy and complex contract." *Florence Corp. v. Penguin Const. Corp.*, 227 A.D.2d 442, 443 (1996) (internal citations omitted). As this is the primary concern of the first *Lollo* factor, the court finds that the language issue, wholly unaddressed by Seguros in his pleadings, tips this factor in favor of Trousdale.

Similar concerns permeate the fourth *Lollo* factor – the nature of the negotiations leading to the contract. The Amended Complaint contains no allegations regarding the negotiation process; it merely alleges that Trousdale "executed and notarized" the Guaranty. (Am. Compl. at ¶ 10.)[6] *Cf. Consac Indus., Inc. v. LDZ Comercio Importacao E Exportacao LTDA*, No. 01-CV-3857, 2002 WL 31094855, at *4 (E.D.N.Y. Aug. 29, 2002) (finding this factor weighed in favor of personal liability where the complaint alleged "that Pludwinski personally negotiated the terms of the Distribution Agreement . . . and served as Consac's contact at LDZ"). But in its

---

[5] Seguros's papers in opposition contain no affidavits or other sworn statements, or documents in support, other than a declaration of its lawyer attesting to the fact that he is annexing to Seguros's opposition true and correct copies of the Complaint and the exhibit thereto (the Columbia translation), and the Amended Complaint and the exhibit thereto (the Blanco translation). (*See* Decl. of Alan M. Pollack (Doc. No. 14-1).)

[6] Curiously, this allegation stands in contrast to the analogous paragraph in Seguros's original Complaint, in which Seguros alleged that Trousdale "*drafted*, executed and notarized" the Guaranty. (Compl. at ¶ 10 (emphasis added).)

7

memorandum in opposition, Seguros asserts, in conclusory fashion, that the Guaranty "was executed by Trousdale and notarized in Newark, New Jersey, after it had been negotiated by Trousdale and Grad's representative in Venezuela." (Mem. in Opp. (Doc. No. 14) at 3.) In support of the assertion that Trousdale himself was involved in the negotiations, Seguros's memo asserts that Trousdale was "familiar with the well settled custom and practice in the construction industry in Venezuela and the United States of providing a personal guarantee as a prerequisite to obtaining a bond from a surety, like Seguros." (*Id*. at 8.) Seguros adds that Trousdale signed numerous documents in Spanish in connection with this project (and even had one "retyped on Grad stationery [sic] which gave him sufficient time to review and modify the Guaranty before signing it." From this, Seguros concludes that Trousdale had to have been engaged in what Seguros characterizes as "direct and significant involvement in the negotiations." (*Id*. at 15.)

However, Seguros does not plead any of these facts, nor does Seguros provide any support, factual or legal, for its claims. And tellingly, nowhere in its Amended Complaint (or in the original, or in its opposition papers) does Seguros allege that in the course of this "direct and significant involvement," Trousdale or his business agent agreed to, or even discussed individual liability during the negotiations culminating in the Guaranty. *See EQT Infrastructure Ltd. v. Smith*, 861 F. Supp. 2d 220, 232 (S.D.N.Y. 2012) (lack of explicit allegation in complaint regarding discussions of individual liability weighs against imposing such liability). This factor, too, weighs against holding Trousdale liable.

The most compelling factors that weigh against imposing individual liability come from the language and structure of the Guaranty itself. First, and perhaps most important, the Guaranty does not contain a liability provision purporting to bind Trousdale individually. While the Guaranty contains Trousdale's name, and contains several references to Trousdale using "I"

8

and "myself," Trousdale is so referenced in his representative capacity as an agent of Grad throughout the Guaranty:

- I, Allen Trousdale, a U.S. Citizen, of legal age domiciled in New Jersey, United States of America, identified with Passport No. 111129634, *acting in my capacity of President of a professional association* organized and existing under the laws of New Jersey, United States of America, whose main business office is located at Two Gateway Center, Newark, New Jersey 07102, known as GRAD ASSOCIATES, P.A." (emphasis added)

- I) I agree and accept to appoint myself, *on behalf of GRAD ASSOCIATES, P.A.*, as Joint and several guarantor and primary payor up to the total amounts guaranteed, by virtue of THE BONDS granted and to be granted in the future . . . . (emphasis added)

- V) The commitment that I hereby acquire *on behalf of GRAD ASSOCIATES P.A.* will remain in effect for as long as the bonds granted remain in force . . . . (emphasis added)

- I agree that should there be a judicial enforcement of the *obligations I hereby assume on behalf of my principal, GRAD ASSOCIATES, P.A.,* the auction announcement will be made by a single publication and the appraisal of the goods to be auctioned will be made by an expert appointed by the Court. (emphasis added)

(Ex. B.) Guarantees are contracts, and are governed by contract principles, including the principle that requires adherence to the plain meaning of the words chosen unless alternate definitions are provided on the face of the contract. The Merriam-Webster dictionary defines "on behalf of someone" as follows: "as a representative of someone." *On Behalf of Someone*, MERRIAM-WEBSTER, *http://www.merriam-webster.com/dictionary/on%20behalf%20of* (last visited on March 21, 2016). Similarly, Black's Law Dictionary defines the phrase as "acting in the place of someone else." *On Behalf Of*, BLACK'S LAW DICTIONARY, http://thelawdictionary.org/on-behalf-of/ (last visited on March 21, 2016). As Trousdale notes, "the phrase recited throughout these passages – "on behalf of" – reinforces the inexorable fact that Mr. Trousdale executed [the Guaranty] as an agent for GRAD." (Mem. in Supp. at 17.)

Further support for this reading derives from the fact that the Guaranty imposes obligations solely on Grad and not on Trousdale:

- II) *GRAD ASSOCIATES P.A. agrees to pay* a) Premiums, including the renewals brought in by THE COMPANY . . . b) Notary fees, Attorneys fees and any other reasonably calculated costs . . . c) Judicial and Extrajudicial collection costs, reasonably calculated resulting from provisions a) and b). (emphasis added)

- IV) *GRAD ASSOCIATES, P.A. agrees to create in favor of* Seguros Nuevo Mundo S.A. a real guarantee consisting of U.S. Treasury Bonds, in the amount of ONE MILLIONS US DOLLARS ($1,000,000.00). (emphasis added)

- VI) *GRAD ASSOCIATES, P.A. will be subject to the jurisdiction of its courts* [of the City of Caracas, Federal District] for any Judicial Proceeding that may arise in connection with this document. (emphasis added)

- *GRAD ASSOCIATES, P.A. agrees to cover or secure* the results of the issued bonds, or to deliver the means of payment. (emphasis added)

(Ex. B.) Each reference is to Grad alone as the obligor, without a single reference to any obligations placed on Trousdale. Of particular note is the forum selection clause, designed to fix the locus for resolving disputes under this contract, which applies only to Grad. As Trousdale notes, "Logic alone suggests that if Seguros had intended to make Mr. Trousdale personally liable on [the Guaranty], it would have specifically mentioned him in the forum selection clause." (Mem. in Supp. at 20.) The contract's silence on this point speaks volumes.

Seguros claims that "[t]he Guaranty clearly and unambiguously states in two places that, Trousdale was agreeing and appointing himself as '[j]oint and several guarantor and primary payor' together with Grad, of the obligations arising under this agreement." (Mem. in Opp'n. at 5, 13.) But in doing so, Seguros does not keep to the actual language of the Guaranty, and wholly removes the language from its context. The Guaranty states in relevant part:

- I) I agree and accept to appoint myself, on behalf of GRAD ASSOCIATES, P.A., as joint and several guarantor and primary payor up to the total amounts guaranteed . . . .

10

- V) That the joint and several Guarantee that GRAD ASSOCIATES, P.A. hereby makes will remain in effect for as long as the bonds granted remain in force, and will not be extinguished until THE COMPANY is released from all liability derived from same.

(Ex. B.) First, clause V discusses the joint and several guarantee that *Grad* makes. This clause hardly suggests that Trousdale is jointly liable with Grad. Second, nowhere in either clause does the Guaranty say that joint and several liability lies as between Trousdale *and Grad*. Indeed, in its own papers in opposition to the instant motion, Seguros claims that it "required that Trousdale, as president and principal shareholder of Grad, and Mr. Andres Simon Azpurua Rodriguez ("Azpurua"), and two other Directors of Eiffel, become joint and several guarantor(s) and primary payor(s) of the Bonds." (Mem. in Opp'n. at 2.) Again, Seguros provides no support for these assertions, nor does Seguros plead any of these facts in its Amended Complaint. Without accepting these statements for the truth of the matters asserted, Seguros's assertions suggest that any joint and several liability flows between the members of the Consortium, and cast serious doubt on Seguros's claim that such liability flows between Grad and Trousdale.

Finally, the *Lollo* analysis requires the court to examine the structure of the signature line. Here, Trousdale and the notary public both simply signed at the end of the agreement. Below Trousdale's signature is his printed name and the date on which he signed the Guaranty. Of significance, Trousdale only signed the agreement once. "Where individual responsibility is demanded the nearly universal practice is that the officer signs twice – once as an officer and again as an individual." *Consac Indus., Inc.*, 2002 WL 31094855, at *4 (quoting *Salzman Sign Co. v. Beck*, 10 N.Y. 2d 63, 67 (1961).)

It is true that in signing, Trousdale did not reference his corporate office by indicating he was signing on behalf of or as president of GRAD. *Cf. id.* at *6 ("Courts have construed a signature by a corporate representative following the word 'by' to be indicative of an act of

11

agency, militating against a finding of personal liability."). Additionally, the fact that a "signatory was the president and principal shareholder in the corporation" is a factor in favor of finding personal liability. *Lerner*, 938 F.2d at 5. However, here, those factors are clearly outweighed. The opening preamble to the document makes clear that in relation to the Guaranty as a whole, Trousdale was "*acting in [his] capacity as President of a professional association.*" So too does the entirety of the document as noted above. Finally, "[a]lthough two signatures are not required in order to impose personal liability on the agent, the existence of only one signature weighs against imposition of personal liability." *Integrated Mktg. & Promotional Sols*, 2006 WL 3627753 at *3.

## CONCLUSION

On balance, all of the factors here weigh against the imposition of individual liability. Thus, drawing from the Amended Complaint and the Guaranty all reasonable inferences in favor of Seguros, the non-moving party, Seguros has failed to plausibly allege "clear and explicit evidence" of Trousdale's intent to be bound by the Guaranty in his individual capacity. Accordingly, Trousdale's motion to dismiss (Doc. No. 13) is granted.

The Clerk of Court is hereby directed to enter judgment accordingly, and close the file.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
March 25, 2016

_____
ROSLYNN R. MAUSKOPF
United States District Judge